**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

BRENDA Z. TORRES VÉLEZ

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO.: 20-1539 (MEL)

**OPINION AND ORDER**

**I.   PROCEDURAL AND FACTUAL BACKGROUND**

Pending before the court is Ms. Brenda Z. Torres Vélez's ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability benefits under the Social Security Act. ECF No. 15. On May 2, 2017, Plaintiff filed an application for Social Security benefits alleging that she became unable to work due to disability on February 1, 2014 ("the onset date"). Tr. 21. Prior to the onset date, Plaintiff worked as a "program aide" and "[a]ccounting clerk." Tr. 28. Plaintiff met the insured status requirements of the Social Security Act through March 31, 2017 ("the date last insured"). Tr. 21. Plaintiff's disability claim was denied on July 21, 2017 and upon subsequent reconsideration. Tr. 21.

Thereafter, Plaintiff requested a hearing which was held on July 23, 2019 before an Administrative Law Judge ("the ALJ"). Tr. 21. On August 13, 2019, the ALJ issued a written decision finding that Plaintiff was not disabled. Tr. 30. Thereafter, Plaintiff requested review of the ALJ's decision. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner, subject to judicial review. Tr. 15–17.

1

Plaintiff filed a complaint on October 9, 2020. ECF No. 1. Both parties have filed supporting memoranda. ECF Nos. 15, 22.

## II. LEGAL STANDARD

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that she is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined

that plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If she is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If she does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent her from doing the type of work she has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all of the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by her mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ concludes that plaintiff's impairment or impairments do prevent her from performing her past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with her age, education, and work experience, allows her to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

**C. The ALJ's Decision**

In reviewing Plaintiff's case, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2017. Tr. 23. At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity from February 1, 2014 through the date last insured. Tr. 23. At step two, the ALJ determined that Plaintiff had the following severe impairments: history of left breast mass in December 2013; "history of right breast carcinoma with axillary lymph node metastasis in February 2014 status post in March 2014 mastectomy, chemotherapy"; general anxiety disorder; and affective disorder. Tr. 23. The ALJ determined that the Plaintiff also has additional impairments that are either non-severe or arose after the date last insured. Tr. 23–24. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 24. Next, the ALJ determined that during the relevant period:

> Plaintiff had the residual functional capacity to perform sedentary work . . . except that she can occasionally reach[] overhead and in all other directions with her right upper extremity (to 90 degrees). [Plaintiff] can climb ramps and stairs frequently, never climb ladders, ropes, or scaffolds, stoop frequently, kneel frequently, crouch frequently, and crawl occasionally. The claimant can never work at unprotected heights, can work moving mechanical parts occasionally, and operat[e] a motor vehicle occasionally, in extreme cold occasionally, in extreme heat occasionally. Her other environmental limitations include moderate exposure to sun. Mentally, the claimant is limited to perform simple, routine tasks, but also to use judgment and [the] ability to adapt to changes in work environment limited to simple work[-]related decisions. She is able to interact with supervisors: frequent; is able to interact with coworkers: frequent; is able to interact with the public: occasional.

Tr. 25. At step four, the ALJ determined that during the relevant period, Plaintiff could not perform her past relevant work as a program aide or accounting clerk. Tr. 28. At step five, the ALJ presented Plaintiff's RFC limitations, as well as her age, education, and work experience to

a vocational expert. Tr. 29. The vocational expert testified that a hypothetical individual with a similar RFC would be able to perform the following representative occupations: telephone order clerk, call out operator, and surveillance system monitor. Tr. 29. Because there was work of significant numbers in the national economy that Plaintiff could perform, the ALJ concluded that she was not disabled during the relevant period. Tr. 30.

### III.   LEGAL ANALYSIS

Plaintiff objects to the ALJ's denial of disability benefits two grounds: First, Plaintiff claims that both the ALJ's physical and mental RFC determinations were not supported by substantial evidence or made pursuant to the correct legal standards. ECF No. 15 at 11–14; 16–17. Secondly, Plaintiff argues that the ALJ's step five determination was not supported by substantial evidence. ECF No. 15 at 14.

#### A. The ALJ's RFC Determination

When formulating a claimant's RFC, the ALJ must base his determination on all relevant evidence, including a claimant's medical record, the medical opinions, and a claimant's descriptions of her limitations. 20 C.F.R. §§ 404.1545, 404.1546. A claimant's RFC is the most she can do despite limitations from her impairments. Id. The claimant bears the burden of providing evidence to establish how her impairments limit her RFC. 42 U.S.C. § 423(d)(5)(A); Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

Plaintiff argues that the ALJ did not follow the correct legal standards in formulating the RFC determination because the ALJ did not give any weight to the evidence provided by physicians and specialists and instead relied on the ALJ's own "lay person" opinions and interpretations of the raw medical data. ECF No. 15 at 11–14, 16. However, Plaintiff points to no "raw data" or any specific instance where the ALJ relied on her own opinions rather than that of

physicians and specialists. Instead, Plaintiff points to one sentence of the ALJ decision which reads, "we will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from your medical sources." Tr. 27. Plaintiff asserts that this statement shows that the ALJ assigned "no weight, be it partial, significant, or controlling, to medical opinions and medical sources." ECF No. 15 at 13–14 (emphasis added). Plaintiff's argument cannot prosper.

The paragraph to which Plaintiff cites is not a conclusion but rather the ALJ's direct reference to the legal standard required under 20 C.F.R. § 404.1520c which replaced the "treating physician rule" for cases filed after March 27, 2017. Previously, ALJs were required to afford "controlling weight" to the medical opinions from a plaintiff's "treating sources." 20 C.F.R. § 404.1527(c)–(c)(2). But for cases filed after March 27, 2017, the Code of Federal Regulations created a new standard, to which the ALJ in this case cited, requiring that ALJs not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [plaintiff's] medical sources." 20 C.F.R. § 404.1520c. Instead, an ALJ must consider a series of five factors when considering medical opinions and prior administrative medical findings, the most important of which are "supportability" and "consistency." 20 C.F.R. § 404.1520c(b)(2); (c)(1)–(2) (the five factors being supportability, consistency, relationship with the plaintiff, specialization, and other factors).

Therefore, Plaintiff's memorandum of law takes the ALJ's statement out of context and attempts to contort it into a conclusion rather than a statement of the law. The ALJ was not stating that she would give medical opinions and medical sources no weight in Plaintiff's case; instead she was explaining the standard to be applied under 20 C.F.R. § 404.1520c. Furthermore,

Plaintiff omits the sentence immediately following the portion of the ALJ decision to which she cites, in which the ALJ explains: "We fully considered the medical opinions and prior administrative medical findings in your case as follows . . ." Tr. 27. Thus, Plaintiff's argument is also inconsistent with the evidence in the record that the ALJ subsequently elaborated in the decision, as discussed below.

### 1. The ALJ's Physical RFC Determination

Plaintiff contends that the ALJ's physical RFC determination was erroneous because the ALJ included reaching capabilities for the Plaintiff "contrary to" and "which finds no base" in the medical evidence. ECF No. 15 at 14, 16. In formulating the RFC the ALJ found that Plaintiff "can occasionally reach[] overhead and in all other directions with her right upper extremity (to 90 degrees)." Tr. 25. Substantial evidence in the record supports the ALJ's finding regarding Plaintiff's reaching capabilities, even if Plaintiff argues the record could justify a different conclusion. See Rodríguez Pagán, 819 F.2d at 3.

Regarding Plaintiff's physical functional limitations, the ALJ referred to the opinion of Plaintiff's treating surgeon, Dr. Jorge Justiano García, who noted that Plaintiff had not come for follow-up since September 2016, but that Plaintiff had no "functional deficiencies." Tr. 685. The ALJ determined that Dr. Justiano's opinion was "somewhat consistent" with the medical evidence showing that Plaintiff had no functional deficiencies, but she nevertheless concluded that Plaintiff does have "some physical limitations." Tr. 27. For example, the ALJ noted that Plaintiff has received physical therapy for her right arm in 2015. Tr. 649. After undergoing this physical therapy, Plaintiff reported that she was feeling much better in her arm and that she was "occasi[o]nally" using her right upper extremity "for everything." Tr. 649. In addition to this evidence, the ALJ drew considerably from State Agency medical consultants Dr. Magda

Rodríguez and Dr. Pedro Nieves. Tr. 27. Dr. Rodríguez concluded that Plaintiff had manipulative limitations in her right upper extremity and in her ability to reach overhead. Tr. 301. However, Plaintiff could push and pull occasionally with her right arm. Tr. 301. Dr. Rodríguez also found the Plaintiff could reach occasionally "up to 90 degree[s]." Tr. 301. Upon reconsideration, Dr. Nieves made the same findings as Dr. Rodríguez. Tr. 322–23.

Based on this evidence, the ALJ concluded in the RFC that Plaintiff could "occasionally reach[] overhead and in all other directions with her right upper extremity (to 90 degrees)." Tr. 25. The ALJ properly considered Plaintiff's descriptions of her limitations, the medical record, and the medical opinions in formulating the Plaintiff's RFC with regarding to her reaching capabilities, and the RFC is therefore based on substantial evidence.

### 2. The ALJ's Mental RFC Determination

Plaintiff also asserts that the ALJ's mental RFC determination did not sufficiently account for Plaintiff's mental impairments through a "function-by-function assessment of Plaintiff's ability to perform work activities that affect mental and emotional status." ECF No. 15 at 17. However, the ALJ's RFC determination did account for mental functional limitations which the ALJ determined were supported by substantial evidence.

The ALJ considered the assessments of Plaintiff's treating psychiatrist Dr. Japhet Gaztambide, who assessed Plaintiff over on at least ten different occasions from March 17, 2015 to November 16, 2017. Tr. 27; Tr. 102–16. In these assessments, Dr. Gaztambide determined that Plaintiff had cognitive difficulties in attention, concentration, and insight. Tr. 107–16. Nevertheless, the ALJ noted that Dr. Gaztambide also found that Plaintiff was cooperative and calm, well-groomed, her thought processes were intact, and that she was oriented in person, place, and time. Tr. 107–16; Tr. 105. The ALJ also referenced the findings of Plaintiff's

9

subsequent treating psychiatrist Dr. Erik Medina who examined Plaintiff on several occasions. Tr. 27; Tr. 251–54; 772–79. Dr. Medina's progress notes likewise reflected that Plaintiff had cognitive difficulties concentrating but that Plaintiff had fair insight, good judgment, intact thought processes, and was calm, cooperative, and well-groomed. Tr. 27; Tr. 251–54; 772–79. In her decision, the ALJ also discussed the opinions of State Agency psychologists Dr. Carmen Pineiro and Dr. Luis Umpierre. Tr. 27. Dr. Pineiro opined that Plaintiff was moderately limited in her ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to complete a normal workday and workweek without interruptions, and to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. Tr. 304. Even so, Dr. Pineiro found that Plaintiff was not significantly limited in her ability to carry out very short and simple instructions, her ability to sustain an ordinary routine, her ability to work in coordination or in proximity to others without being distracted by them, and her ability to make simple work-related decisions. Tr. 304. Dr. Pineiro concluded, and the ALJ noted, that Plaintiff could "at least" do simple tasks and maintain her attention and concentration for "at least" a two-hour period. Tr. 304. Dr. Umpierre concurred with Dr. Pineiro's assessment of Plaintiff. Tr. 325–27

The ALJ accounted for this evidence in the record by finding several functional limitations because of Plaintiff's mental conditions. First, in accordance with the above evidence, the ALJ concluded that Plaintiff's mental conditions are "severe" and that she is only able to perform "simple tasks." Tr. 28. Therefore, the ALJ explained that she "reduced the [Plaintiff] to simple and routine work due to her alleged fatigue and decreased concentration." Tr. 28.[1] Accordingly, in the RFC, the ALJ found that Plaintiff is limited to performing "simple, routine

---

[1] Furthermore, the ALJ reasoned that "[w]ork at the sedentary level also accommodates" the alleged nausea, fatigue, and decreased concentration. Tr. 28.

10

tasks" but that Plaintiff could use her judgment and is able to make simple work-related decisions. Tr. 24. The ALJ also concluded that Plaintiff is able to frequently interact with supervisors and coworkers but can only occasionally interact with the public. Tr. 25. Therefore, the ALJ did appropriately consider the medical evidence and opinions of record in determining Plaintiff's mental limitations in the RFC. The ALJ's mental RFC determination is thus supported by substantial evidence and does not require a remand.

### B. The ALJ's Step Five Determination

Finally, Plaintiff contends that the ALJ erred at step five because the ALJ accepted the occupation of telephone order clerk that cannot be performed given the RFC that the ALJ formulated—an RFC which included reaching capabilities contrary to the medical evidence. ECF No. 15 at 14. Insofar as the Plaintiff disagrees with the RFC hypothetical that the ALJ presented to the vocational expert, remand would not be warranted as long as substantial evidence supports the ALJ's RFC determination, because the Plaintiff cannot relitigate the RFC determination at step five. See Gallant v. Berryhill, 2017 WL 2731303, at *7 (D. Me. June 25, 2017) ("This argument hinges on the success of the plaintiff's RFC arguments, which I have rejected for the reasons discussed above. Accordingly, it forms no basis for remand."). Additionally, an ALJ's step five finding is sufficient if there exists at least one occupation which the Plaintiff can perform. 20 C.F.R. § 404.1566(b) ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [Plaintiff is] able to meet with [Plaintiff's] physical or mental abilities and vocational qualifications.") (emphasis added); Muñoz Cintrón v. Commissioner of Social Security, 2021 WL 840905, *4 (D.P.R. Mar. 5, 2021) (citing Bavaro v. Astrue, 413 F. App'x 382, 384 (2d Cir. 2011) ("[t]he

11

Commissioner need show only one job existing in the national economy that [plaintiff] can perform.").

The hypothetical presented by the ALJ based on Plaintiff's RFC only allows for the Plaintiff to engage in occasional reaching. Tr. 25, 69. During the hearing, the VE acknowledged that telephone order clerk requires frequent reaching. Tr. 69. Nevertheless, the VE testified that in her experience, education, and training "for the past 19 years," work as a telephone order clerk could be performed with occasional reaching up to 90 degrees as described in the Plaintiff's RFC. Tr. 69–70. The VE also testified that at the sedentary level with the Plaintiff's reaching limitations, the Plaintiff could still work as either a call-out operator or as a surveillance systems monitor even if she could not work as a telephone order clerk. Tr. 69. Even assuming arguendo that Plaintiff's reaching abilities preclude her from working as a telephone order clerk, there still exists two occupations that the Plaintiff could perform with her reaching limitations, so the ALJ did not err.

Plaintiff also argues that the ALJ erred because during Plaintiff's examination of the VE, Plaintiff posed additional mental limitations in a hypothetical to the VE and the VE testified that Plaintiff could only perform one of the three occupations available in the national economy, namely the surveillance systems operator. ECF No. 15 at 20; Tr. 71. Once again, Plaintiff's argument is an improper attempt to relitigate the Plaintiff's mental RFC at step five, but even accepting Plaintiff's characterization of her mental limitations, the VE still testified that there exists at least one occupation existing in the national economy which Plaintiff can perform—which is enough to deny remand. 20 C.F.R. § 404.1566(b); Muñoz Cintrón 2021 WL 840905 at *4. Accordingly, the ALJ's finding that there were jobs that existed in significant numbers in the national economy that Plaintiff can perform was supported by substantial evidence.

**IV.    CONCLUSION**

In conclusion, Plaintiff contends that ALJ's decision is "wrong" and is not based on the "totality of the evidence." ECF No. 15 at 11. However, the court must affirm the ALJ's decision if supported by substantial evidence, "even if the record arguably could justify a different conclusion." Rodríguez Pagán, 819 F.2d at 3. Based on the foregoing analysis, the court concludes that the decision of the Commissioner that Plaintiff was not entitled to disability benefits was supported by substantial evidence. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 1st day of February, 2022.

s/Marcos E. López<br>U.S. Magistrate Judge